UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL C. RICHARDSON,           )<br>                              )<br>         Plaintiff            )<br>                              )<br>v.                            )<br>                              )<br>MICHAEL J. ASTRUE,            )<br>Commissioner of Social Security, )<br>                              )<br>         Defendant            ) | No. 1:11-cv-382-JAW |

# REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal challenges the sufficiency of the evidence to support the residual functional capacity ("RFC") assigned to the plaintiff by the administrative law judge. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from generalized anxiety disorder and peripheral neuropathy, impairments that were severe but, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 20, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Record at 16-17; that the plaintiff had the RFC to perform light work except that he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, could perform semi-complex tasks, tolerate occasional interaction with coworkers, supervisors, and the public, and could adapt to routine changes in the work setting, Finding 5, *id*. at 18; that he was unable to perform any past relevant work, Finding 6, *id*. at 23; that, given his age (42 years old on the alleged date of onset of disability, May 6, 2009, a younger individual), at least high school education, transferable work skills, and RFC, there were other jobs existing in significant numbers in the national economy, Findings 6-10, *id*. at 23; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time though the date of the decision, Finding 11, *id*. at 24.  The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to

perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff contends that the administrative law judge impermissibly interpreted raw medical evidence and mischaracterized medical evidence. Statement of Specific Errors ("Itemized Statement") (ECF No. 10) at 2-12. Specifically, he challenges the administrative law judge's statement that he gave "[s]pecial consideration . . . to EMG testing and nerve conduction testing, which, although determinative of establishing a diagnosis of peripheral neuropathy, do not correlate directly to the degree of symptoms alleged." Record at 19. The plaintiff asserts that this constitutes interpretation of raw medical evidence, which an administrative law judge may not do. *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

However, the administrative law judge cited the testimony of the medical expert at the hearing in support of this statement. Record at 19. And, the opinion also includes the following extensive discussion of this subject:

> The independent medical expert testified reliably that the medical evidence establishes reliable a neuropathy based on B12 deficiency but there is no other etiology established for the claimant's pain symptoms. This testimony is adopted.
>
> \* \* \*
>
> The impartial medical expert, Dr. Webber, reviewed the medical evidence of record and opined that there is no basis for a diagnosis of a traumatic brain injury. In particular, Dr. Webber testified reliably that the claimant's tremors observed on physical examination are not attributable to a traumatic brain injury. He further noted that, although the brain scan identified a brain lesion, Dr. Sears placed "no real emphasis" on this finding and did not attribute any symptoms to the lesion. Dr. Webber's opinion is consistent with the medical evidence described above, and the claimant did not question at hearing Dr. Webber's opinion on this point.

*Id.* at 19. Reconciling the medical expert's testimony with that of the plaintiff's treating physician, the administrative law judge noted:

> The claimant's treating physician notes describe sensory neuropathy concurrent with a B12 vitamin deficiency. Clinical examination reports describe some reduced sensation in the claimant's extremities. Nevertheless, these clinical examination reports do not fully support the claimant's allegations of substantial functional loss. In particular, although the claimant does not necessarily exert full effort on strength testing, there is no conclusive deficiency of motor strength or function. Moreover, although a treating doctor noted that the claimant presented with a "very tentative" and "somewhat antalgic" gait, the claimant was able to ambulate effectively after encouragement. In terms of the diagnostic evidence, nerve conduction studies indicate mild to moderate slowness of nerve response. At the hearing, the independent medical expert testified reliably that these results are sufficient to establish a diagnosis of peripheral neuropathy; however, they do not correlate directly with the degree of symptoms alleged. Finally, the treating doctor has expressed some skepticism regarding the connection between the claimant's neuropathy and his reported symptoms. In September 2010, the treating doctor noted:
>
>> [The claimant] has significant pain syndrome, but some of the features are not completely characteristic of a neuropathy, particularly the sort of all over aching he describes after activity. He does not seem to have frank tenderness.
>
> The treating doctor's note tends to support the degree of impairment alleged by the claimant at hearing.

*Id.* (citations omitted). The administrative law judge then concluded:

> Special weight is given to the testimony of the independent medical expert regarding the subjective nature of neuropathic pain. He explained that neuropathic pain tends to increase with activity and can present as varying degrees of pain. The independent medical expert also testified that this pain is subjective and is difficult to assess based on objective findings. I have considered the subjective factors applicable to this case and conclude that the degree of impairment asserted by the claimant caused by his appropriately diagnosed peripheral neuropathy is not credited fully.
>
> * * *
>
> As for the opinion evidence regarding the claimant's physical impairment, the independent medical expert provided several opinions regarding the etiology and effects of the claimant's peripheral

> neuropathy.  He testified that there is no basis for the claimant's allegation of a traumatic brain injury as the cause of his neuropathy.  He explained that the medical evidence establishes neuropathy based on a B12 vitamin deficiency, but that there is no other objective etiology for the claimant's pain symptoms.  Dr. Webber's testimony is consistent with and well-supported by his comprehensive review of the entire record.  It is entitled to great weight, and the undersigned has relied on his medical expertise in his evaluation of the objective evidence.

*Id*. at 16, 19-20 (citations omitted).

Contrary to the plaintiff's argument, Itemized Statement at 2, the administrative law judge's statement that the EMG and nerve conduction testing "do not correlate directly to the degree of symptoms alleged" does not represent the administrative law judge's interpretation of raw medical evidence.  It is taken directly from the hearing testimony of the medical expert, as the administrative law judge's citation of that testimony suggests.  Record at 63-64.  The plaintiff does not challenge the medical expert's ability to draw such conclusions.

The plaintiff next assails the administrative law judge's assertion that "the claimant does not necessarily exert full effort on strength testing."  Record at 19.  The plaintiff argues that this "mischaracterizes Dr. Sears' examination report."  Itemized Statement at 3.  "This interpretation of Dr. Sears' examination findings is inaccurate, and reflects the ALJ's interpretation of the medical data rather than a re-statement of the medical expert's interpretation of the data."  *Id*.  Dr. Sears found that "[s]trength testing shows reduced ability to exert full effort in virtually all muscles tested," Record at 309.  Although the administrative law judge's statement that "the claimant does not necessarily exert full effort on strength testing," *id*. at 19, substitutes the word "effort" for "ability," contrary to the plaintiff's characterization it does not "mischaracterize" Dr. Sears' note, and, in any event, does not interpret raw medical data.

The plaintiff also challenges the administrative law judge's report that "the [plaintiff] was able to ambulate effectively after encouragement[,]" *id*., as another "interpretation of raw data,"

5

Itemized Statement at 3. Dr. Sears opined that the plaintiff "has some difficulty walking tandem and actually improved with encouragement. He reports being unable to walk on his toes, but then actually was able to do so and also was able to walk on his heels with encouragement." Record at 309. Whether "ambulating effectively" is the equivalent of "improved with encouragement" is a small dispute, and, in any event, is not an instance of lay interpretation of raw medical data.

I do not see how either of these misstatements of Dr. Sears' findings, if misstatements they were, necessarily made a difference in the outcome of the plaintiff's claim, particularly where the administrative law judge relied explicitly on the testimony of Dr. Webber, the medical expert at the hearing. The plaintiff's attorney was unable to persuade me otherwise at oral argument.

The plaintiff next complains, Itemized Statement at 5-6, of the administrative law judge's statement that Dr. Sears showed "some skepticism regarding the connection between the claimant's neuropathy and his reported symptoms." Record at 19. Whether or not the text of Dr. Sears' report, quoted by the administrative law judge, expresses skepticism about the connection between the plaintiff's neuropathy and all of his pain is debatable. This quibble, however, does not affect the outcome of the plaintiff's claim. The plaintiff's own characterization of Dr. Webber's testimony (at page 6 of his itemized statement) may be similarly inaccurate, but, again, I do not see how the outcome of the claim is affected thereby.

The plaintiff also challenges the administrative law judge's treatment of the opinion of Elizabeth Weiss, M.D. Itemized Statement at 8-12. He begins by asserting that the administrative law judge's statement that Dr. Weiss's opinion "relies upon the claimant's alleged traumatic brain injury, which is not a medically determinable impairment[,]" Record at 21, is

erroneous. Itemized Statement at 9. It is not; the plaintiff himself concedes that Dr. Weiss's opinion is that his concentration, persistence, and pace was affected by a traumatic brain injury. *Id.* The administrative law judge's statement that Dr. Weiss's opinion "relies upon the claimant's traumatic brain injury" is correct at least to this extent and cannot be read as necessarily describing her opinion as relying only on that claimed injury. This criticism does not provide a reason to overturn the commissioner's decision.

Next, the plaintiff objects to the administrative law judge's statement that "Dr. Weiss bases her opinion on the claimant's self-assessment of his limitations rather than objective medical findings." Record at 21. That statement is preceded in the administrative law judge's opinion by the following: "Her opinion is also inconsistent with the requirements of the claimant's part-time work requirements, the opinion of Dr. Webber, and the objective medical evidence ." *Id.* In context, it appears to me that the administrative law judge, by adopting Dr. Webber's testimony to the effect that the plaintiff's physical symptoms could not be related to the results of nerve conduction testing or an EMG, Record at 63, and that these tests did not establish the severity of a neuropathy, *id.* at 64, rejected what he viewed as Dr. Weiss's acceptance of the plaintiff's reports of his symptoms despite the lack of medical evidence to support the conclusion that they were caused by his neuropathy.

The plaintiff asserts that

> Dr. Weiss' office orchestrated the referrals to specialists and coordinated the Plaintiff's case with respect to his peripheral neuropathy. The Plaintiff's symptoms have consistently been sensory loss, pain, and swelling in this upper extremities. Dr. Weiss indicated that . . . the medical finding of peripheral neuropathy on EMG supported the limitations. Dr. Weiss based her opinion on the objective test results and the medical diagnoses assessed by Dr. Sears, a neurologist.

7

Itemized Statement at 9-10 (citation omitted). However, he provides no citation to the record for any of these factual assertions other than Dr. Weiss' entries on a form entitled "Physical Residual Functional Capacity Assessment." Record at 483-86.

I found no medical records signed or countersigned by Dr. Weiss in the record.[2] She does not indicate on the Physical Residual Functional Capacity Assessment form that her conclusions are based on information from Dr. Sears; rather, to the questions asking what medical findings support the medical limitations she assigns to the plaintiff, she writes only "peripheral neuropathy" and "EMG showing peripheral neuropathy." *Id*. at 484, 485. Dr. Webber's testimony is inconsistent with Dr. Weiss' form, in that he explains why the mere diagnosis of peripheral neuropathy does not necessarily provide support for the extent of symptoms claimed by the plaintiff.

The state-agency reviewer who saw the results of Dr. Sears' testing and his notes, Donald Trumbull, M.D., set exertional limitations that differ rather dramatically from those assigned by Dr. Weiss. *Id*. at 472-79. The administrative law judge was entitled to rely on Dr. Trumbull's conclusions, as he did, *id*. at 20, as medical evidence inconsistent with Dr. Weiss' conclusions. Particularly where, as here, the person identified by the plaintiff as his treating physician has no recorded notes or observations to support her conclusions, the administrative law judge committed no error in his treatment of Dr. Weiss' form. *See generally MacDougall v. Astrue*, No. 2:10-cv-400-GZS, 2011 WL 4566268, at \*3-\*5 (D. Me. Sept. 29, 2011).

---

[2] This fact makes it impossible for me to evaluate the argument of the plaintiff's attorney at oral argument to the effect that Dr. Weiss's opinion was not based on the plaintiff's subjective reports of symptoms because "she had been treating him all along." From all that appears in this record, it is not clear that Dr. Weiss, as opposed to someone else in her office, had been treating the plaintiff at any particular time.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge